2026 UT App 99

# THE UTAH COURT OF APPEALS

KIMBERLY BLACKWELL,
Appellant,
*v.*
HOLIDAY OIL COMPANY,
Appellee.

Opinion
No. 20240994-CA
Filed July 2, 2026

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 210904303

Lynn C. Harris and Leah J. Aston,
Attorneys for Appellant

Patrick C. Burt and William G. Wilson,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

ORME, Judge:

¶1 Kimberly Blackwell slipped and fell on the corner of a floor mat while in a Holiday Oil Company (Holiday Oil) convenience store. Blackwell sued for negligence but a jury later found that Holiday Oil was not at fault for her fall. On appeal, Blackwell contends that the trial court erred by refusing to include a Model Utah Jury Instruction directing that the "[v]iolation of a safety law is evidence of negligence unless the violation is excused." Because the advisory safety standards Blackwell put forward at trial do not satisfy the definition of "safety law," we affirm.

BACKGROUND[1]

*The Fall*

¶2 One morning in April 2018, Blackwell entered a Holiday Oil convenience store to purchase a soda. As Blackwell was exiting the store, she moved to the side to make way for a child and stepped on a corner of an unsecured entryway floor mat. The mat curled beneath her foot, causing her to slip and fall forward, landing on her right hand. Store cameras captured the fall on video.

¶3 Blackwell sustained a wrist injury that required a surgical procedure in which three pins were inserted into her wrist. While Blackwell experienced a reduction in wrist pain immediately following the surgery, she suddenly developed severe pain in her wrist about one week prior to the scheduled removal of her cast. She was subsequently diagnosed with complex regional pain syndrome, which, as explained by a medical expert at trial, is "one of the most painful" chronic pain disorders and involves the peripheral, central, and autonomic nervous systems.

*The Trial*

¶4 In August 2021, Blackwell filed a complaint against Holiday Oil, alleging that it "was careless and negligent in the operation and maintenance of the building/business's sidewalk/entrance/exit areas . . . both in the violation of existing standards of care and the applicable safety statutes." A five-day jury trial was held in June 2024. According to evidence presented at trial, the night before Blackwell's fall, a contractor pressure washed the sidewalk directly in front of the store, resulting in

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict." *Meeks v. Peng*, 2024 UT 5, n.1, 545 P.3d 226 (quotation simplified).

water seeping under the entrance doors and pooling beneath the floor mat. Water was indeed found under the mat after Blackwell's fall.

¶5    One of the central issues at trial was whether Holiday Oil breached its duty of care in placing and maintaining the floor mat on which Blackwell slipped.[2] On that question, Blackwell called a "premises safety and security consultant" as an expert witness. He opined that the mat Blackwell slipped on "is not an uncommon mat in the industry" and that water under the mat "potentially" affected "the cohesiveness of the underside of the mat . . . especially at the corner of the mat." The expert further stated that mats should not "be easily moved . . . or create a greater slip hazard than not having a mat." And based on his review of the footage of Blackwell's fall, he assessed that the "underlying cause" of the fall was "how easily that mat moved."

¶6    Next, Blackwell called a "premises liability expert," who opined that the condition of the mat at the time of the fall violated the safety standards set by the International Building Code (the IBC), the American National Standards Institute (ANSI), and the American Society for Testing and Materials (ASTM). He stated that irrespective of the presence of water, the mat presented "a permanent hazard"—as opposed to a temporary one. The expert further testified that under ASTM standards, walkways must be "stable" in terms of movement or migration and that mats must "not have loose or frayed edges, worn areas, holes, wrinkles, or other hazards." He also stated that under ANSI standards, a mat that migrates must either "be secured in place" or be replaced by another mat "that reduces or eliminates migration." The expert

---

2. Other key issues at trial were causation and damages. But because this appeal is limited to addressing the standard of care, we do not recount the facts relevant to those issues in this opinion.

also cited the IBC when discussing slip-resistant surfaces. On cross-examination, he acknowledged that Utah has not codified ASTM or ANSI standards into statute.[3]

¶7      Later, on the same duty-of-care issue, Holiday Oil called its "director of field systems" as a witness. He testified that when the exterior sidewalks of the store are pressure-washed, "sometimes water comes underneath the door," which had been the case the night before Blackwell's fall. Also, he asserted that based on his extensive experience related to "convenience stores and their operation," there is no requirement to "tack down" or otherwise secure mats to the floor.

¶8      Holiday Oil next called a biomechanics expert, who testified that the use of mats is not required by statute, ordinance, or the IBC. The expert further stated that ANSI and ASTM provide "consensus standards," which are better understood as "best practices based upon what peers have determined should be done." But he stated that those consensus standards, which do recommend the use of mats, are not included in the provisions of the IBC that have been codified in Utah. *See supra* note 3. The expert also stated that, when used, there is no requirement that commercial mats be "affixed permanently to the ground." He stated that ASTM also does not require such measures and that it merely directs that mats have a slip-resistant rubber base. He further explained that securing a mat to the floor could create a tripping hazard as the mat gets stretched out.

---

3. While Utah has codified certain provisions of the IBC, *see* Utah Code Ann. § 15A-2-103(1)(a) (LexisNexis Supp. 2025), it is uncontested that those adopted sections are not relevant to the current case.

¶9 Based on his inspection of "a substantially similar type of mat,"[4] the biomechanics expert concluded that the mat on which Blackwell slipped satisfied both ANSI and ASTM standards because it had a rubber base and even "little nubs that actually provide additional slip resistance for the mat." Further, based on his review of the video of the fall, he opined that although the mat was "not in an optimal position," which "may have played a role," the fall was ultimately caused by the "highly unusual" manner in which Blackwell stepped on the mat as well as her stepping "on the extreme corner edge of the mat." Specifically, he stated that when Blackwell moved to the side to make way for the child, "instead of stepping directly outward, or stepping sideways and then stepping out," she took "one sideways-oriented step," which produced "a lateral-oriented force on that corner edge of the mat," causing the mat to "slide[] out."

*The Requested Jury Instruction*

¶10 Blackwell requested that the jury receive an instruction based on Model Utah Jury Instruction 2d CV212 (MUJI CV212). *See* Model Utah Jury Instructions 2d CV212 (2022), https://legacy.utcourts.gov/muji/?cat=1&subcat=2 [https://perma.cc/C3FR-RND5]. Her proposed instruction stated,

> Violation of a safety law is evidence of negligence unless the violation is excused. Kimberly Blackwell claims that Holiday Oil violated the following safety laws:
>
> (1) The American Society for Testing and Materials has established a safety standard for Safe

---

4. Because Blackwell initiated suit more than three years after her fall, none of the expert witnesses were able to inspect the actual mat on which she slipped, that mat having been replaced at some point.

Walking Surfaces. This Safety Standard is contained in Plaintiff's Exhibit 14a.

(2) The American National Standards Institute/National Floor Safety Institute has established a Standard Guide for Commercial Entrance Matting in Reducing Slips, Trips, and Falls. This Safety Standard is contained in Plaintiff's Exhibit 14b.

(3) The International Building Code has established a safety standard requiring slip-resistant surfaces. This Safety Standard is contained in Plaintiff's Exhibit 14c.

If you decide that Holiday Oil violated a safety law and that the violation was not excused, you may consider the violation as evidence of negligence. If you decide that Holiday Oil did not violate a safety law or that the violation should be excused, you must disregard the violation and decide whether Holiday Oil acted with reasonable care under the circumstances.

¶11 Prior to the submission of the case to the jury, the trial court heard oral arguments from the parties regarding the proposed MUJI CV212 instruction outside the presence of the jury. Blackwell argued that safety standards like those she proposed in the instruction need not be formally codified to qualify as a "safety law," provided that expert testimony demonstrates it is a reliable and accepted standard within the relevant industry. The trial court was unpersuaded and declined to instruct the jury per MUJI CV212, stating, "Well, . . . if it's a law that doesn't apply in Utah, I don't know how [Holiday Oil] could be held accountable for it."

¶12 During deliberations, the jurors submitted a question to the court asking whether they were "finished" if they answered "no" to the special verdict form question regarding whether "Holiday Oil knew or should have known that the dangerous safety hazard of the entry mat presented an unreasonable risk of harm." The court answered, "Yes." The jury then returned a verdict finding that Holiday Oil was not at fault.

¶13 Blackwell appeals.

ISSUE AND STANDARD OF REVIEW

¶14 Blackwell argues that the trial court erred in declining to instruct the jury in accordance with MUJI CV212. The applicable standard of review for challenges to jury instructions depends on the nature of the claim. *State v. Hunt*, 2025 UT 54, ¶¶ 43–44, 582 P.3d 772. While "parties are entitled to have the jury instructed accurately on the law," they "are not entitled to" specific phrasing, and we review the trial court's discretionary wording choices for an abuse of discretion. *Id.* ¶ 45 (quotation simplified). But when a challenge to a jury instruction raises a question of law, we review the issue for correctness. *Id.* ¶ 46. Examples of such legal questions include claims that an instruction misstated the law or that the court denied an instruction to which a party was legally entitled. *Id.* And because "all parties are entitled to have their theories of the case submitted to the jury in the court's instructions, provided there is competent evidence to support them," *Paulos v. Covenant Transp., Inc.*, 2004 UT App 35, ¶ 11, 86 P.3d 752 (quotation simplified), Blackwell's claim falls in the latter category, and we therefore review it for correctness.

ANALYSIS

¶15 In its unaltered form, MUJI CV212 states, in relevant part,

> Violation of a safety law is evidence of negligence unless the violation is excused. [name of plaintiff] claims that [name of defendant] violated a safety law that says:
>
> [Summarize or quote *the statute, ordinance or rule*.]

MUJI CV212, https://legacy.utcourts.gov/muji/?cat=1&subcat=2 [https://perma.cc/C3FR-RND5] (emphasis added). The instruction next directs that if the jury determines that the defendant "violated this safety law," it "must decide whether the violation is excused," and the instruction then lists several circumstances under which the violation is excused. *Id.* Lastly, the instruction states,

> If you decide that [name of defendant] violated the safety law and that the violation was not excused, you may consider the violation as evidence of negligence. If you decide that [name of defendant] did not violate the safety law or that the violation should be excused, you must disregard the violation and decide whether [name of defendant] acted with reasonable care under the circumstances.

*Id.*

¶16 Blackwell argues that the trial court erred in not giving her requested MUJI CV212 instruction based on the court's conclusion that the advisory safety standards—the standards from ANSI, ASTM, and relevant portions of the IBC—were not codified into Utah law. Citing MUJI CV212's bracketed direction to the court and parties to "[s]ummarize or quote the statute, ordinance or rule," Blackwell asserts that the instruction's reference to "rule" contemplates the inclusion of advisory safety standards in its definition of "safety law." Specifically, she contends that advisory safety standards fall squarely within the

dictionary definition of "rule," i.e., "a prescribed guide for conduct or action" or "an accepted procedure, custom, or habit." *See Rule*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rule [https://perma.cc/MVU9-3SET]. Blackwell urges that any interpretation restricting a "safety law" to formal government enactments would render the instruction's use of the term "rule" superfluous. Blackwell further asserts that because MUJI CV212 "is intended to instruct a jury on prima facie evidence of negligence and not negligence per se," it "supports a more expansive interpretation of the term 'safety law.'"[5]

¶17    Holiday Oil, on the other hand, asserts that MUJI CV212's "pervasive use of the term" "law"—eleven times to be exact— "makes an interpretation of 'rule' that encompasses uncodified safety standards wholly implausible." Holiday Oil further contends that under the interpretive canon *noscitur a sociis*, the

---

5. Blackwell cites *Paulos v. Covenant Transport, Inc.*, 2004 UT App 35, 86 P.3d 752, in support of her interpretation. But *Paulos* did not directly address the issue before us. In that case, the appellant faulted the trial court for instructing the jury on three exceptions to the general rule that "a violation of a safety law is evidence of negligence." *Id.* ¶ 26 (quotation simplified). Although it is unclear what the relevant safety law was in *Paulos*, Blackwell suggests it may have been the American Trucking Association's Safety Guidelines Handbook (the ATA handbook). *See id.* ¶ 8. But even if this were the case, the appellant did not challenge the ATA handbook's categorization as a "safety law"—to the contrary, the appellant was the one who sought admission of the ATA handbook and "[b]oth sides acknowledged that the ATA handbook set forth an accepted [applicable] standard of care." *Id.* ¶ 12. On appeal, the appellant challenged only the three listed exceptions in the jury instruction—not whether the ATA handbook qualified as a "safety law." *Id.* ¶ 26. For that reason, *Paulos* is not relevant to the issue now before us.

instruction is referring to "a codified, legally binding rule." We find the latter argument highly persuasive.

¶18    Under the *noscitur a sociis* interpretive canon, "if two or more words are grouped together . . . , the meaning of a particular word may be determined by reference to the meaning of the words surrounding it." *Armenta v. Unified Fire Auth.*, 2025 UT 26, ¶ 29, 573 P.3d 1283 (quotation simplified). "Absent a contrary textual indication, we presume that" the grouping of "certain words or terms together" indicates "some sort of commonality in mind that motivated the grouping." *Id.* "And we postulate that if we can identify the correct commonality, we can define an uncertain term with reference to the common thread." *Id.* Further, "we need not discern a textual ambiguity to employ the *noscitur a sociis* canon." *Id.* ¶ 35. "Rather, it, like other textual canons, is a tool in our plain-language toolkit that we use to interpret text without resort to non-textual sources." *Id.*

¶19    Applying this canon to the phrase "statute, ordinance or rule" in MUJI CV212, we interpret the term "rule" by looking for any commonalities it may have with the terms "statute" and "ordinance." *See id.* ¶ 29. Of course, a statute is "a law enacted by the legislative branch of government." *Statute*, Merriam-Webster, https://www.merriam-webster.com/dictionary/statute [https://perma.cc/3MKK-2T47]. *See Statute*, Black's Law Dictionary (12th ed. 2024) (defining "statute" as "[a] law enacted by a legislative body"). And an ordinance is "a law set forth by a governmental authority," specifically, "a municipal regulation." *Ordinance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ordinance [https://perma.cc/873L-YTJ7]. *See Ordinance*, Black's Law Dictionary (12th ed. 2024) (defining "ordinance" as "[a]n authoritative law or decree," more specifically, "a municipal regulation"). The unifying characteristic between statutes and ordinances is that they are both formally codified, legally binding legislative enactments. As such, we adopt the definition of the term "rule"

that shares this common characteristic. In this context, "rule" as used in MUJI CV212 is properly understood as an administrative rule, which is "[a]n officially promulgated agency regulation that has the force of law." *Administrative rule*, Black's Law Dictionary (12th ed. 2024).

¶20 Moreover, this definition of "rule" also reflects the one set forth in section 288B of the Second Restatement of Torts, which Utah has adopted. *See Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 45 n.82, 424 P.3d 866. Section 288B states,

> (1) The unexcused violation of a legislative enactment or *an administrative regulation* which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

> (2) The unexcused violation of an enactment or *regulation* which is not so adopted may be relevant evidence bearing on the issue of negligent conduct.

Restatement (Second) of Torts § 288B (Am. L. Inst. 1965) (emphases added). According to its plain language, section 288B expressly limits its application to formally codified standards, including administrative rules. And much like subsection 288B(2), MUJI CV212 instructs the jury that upon finding an unexcused violation of a "safety law," it "may consider the violation as evidence of negligence."[6] Adopting Blackwell's expansive

---

6. Blackwell incorrectly states that MUJI CV212 "is intended to instruct a jury on prima facie evidence of negligence." "Prima facie . . . generally means sufficient to establish a fact or raise a presumption unless disproved or rebutted." *State v. Clara*, 2024 UT 10, ¶ 33, 546 P.3d 963 (quotation simplified). And pursuant to section 288B, "before violation of a legislative standard will be held to be negligence per se (or prima facie evidence of

(continued…)

definition of "rule" would thus conflict with section 288B, which limits evidence of negligence to unexcused violations of *codified* standards.

¶21    And here, neither ANSI nor ASTM standards, nor the relevant provisions of the IBC, have been codified by our Legislature, the governing municipal authority, or an administrative agency. Because they remain uncodified advisory safety standards, they do not satisfy MUJI CV212's use of the term "rule"—or "safety law" more broadly. The trial court thus did not err in declining Blackwell's request to provide that instruction, which included these standards, to the jury.


CONCLUSION

¶22    Because the advisory safety standards Blackwell relied on at trial do not satisfy the definition of "safety law," the trial court correctly declined to instruct the jury on MUJI CV212.

¶23    Affirmed.

_____

negligence), the legislative standard must first be adopted by the court as defining the standard of conduct of a reasonable person." *Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶45 n.82, 424 P.3d 866 (quotation simplified). Thus, MUJI CV212's direction that an unexcused violation of a safety law "may" be considered "as evidence of negligence" does not rise to the level of prima facie evidence—it merely states that the violation may be relevant to the jury's determination. As just mentioned in the text, MUJI CV212 reflects subsection 288B(2), which addresses legislative standards that have *not* been adopted by the court and therefore do not rise to the level of negligence per se or prima facie evidence of negligence.